92 P.3d 1081

Hans BOLL and Peggy Boll, husband and wife, Plaintiffs/Appellants/Cross–Respondents,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant/Respondent/Cross–Appellant.

No. 29295.

Supreme Court of Idaho, Boise, March 2004 Term.

June 15, 2004.

Robertson Hepworth Sleete Worst & Sto-
ver PLLC, Twin Falls, for Appellants. Jef-
frey J. Hepworth argued.

Elam & Burke PA, Boise, for Respondent. Jeffrey A. Thomson argued.

KIDWELL, Justice.

This case is an appeal from a jury verdict, finding no breach of contract by an insurance company and a district court's subsequent application of the "common fund" doctrine to award the Appellants attorney fees for collection expenses in securing repayment of an insurance company's subrogation interest. The judgment of the district court is affirmed.

I.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 12, 1996, the Appellants, Hans and Peggy Boll (the Bolls) were involved in an automobile accident in Idaho Falls, Idaho. The Bolls were insured by the Respondent, State Farm Mutual Automobile Insurance Co. (SFM). The owner of the other car involved in the accident was L. Eugene Reese (Reese), who was insured by Safeco Insurance Co. (Safeco). The Bolls and their children were injured in the accident and incurred medical expenses totaling $11,868.81. SFM timely paid these expenses under the medical payment portion of the Bolls' insurance policy.

On April 26, 1996, about two weeks after the accident, a claims representative for SFM sent a letter to the Bolls explaining that when they make a payment for medical expenses they have a right of subrogation. The letter also informed the Bolls of the following: to take no action that would jeopardize SFM's right of subrogation; SFM expected to pursue the right of subrogation directly and for the Bolls not to attempt to recover the amount paid by SFM; to advise SFM prior to settlement; and if the Bolls did recover, the policy required the Bolls to hold the amount of SFM's medical expenses payment in trust and reimburse State Farm.

On June 24, 1996, SFM sent a letter to Safeco stating that SFM's investigation showed that Reese, Safeco's insured, was responsible for the accident of April 12, 1996, and that the letter served as notice of SFM's

right of subrogation. On July 2, 1996, Safeco responded, "we are not at this time in a position to honor your subrogation interest at this time, but will do so at such time settlement is reached. Keep in mind we will honor any medical expenses that are necessary and related to the above accident."

The Bolls retained J.D. Hancock sometime in July or August 1996 as their attorney. SFM sent a letter to Mr. Hancock dated August 26, 1996, which stated in part:

"any payment for State Farm of medical expenses under C coverage is subrogateable to State Farm ... State Farm intends to pursue recovery of its payments directly with the other party and their insurance company. Please do not prejudice State Farm's right of recovery.... If such action or claim is undertaken without our express authorization, we will not pay or be responsible for any expense, obligation, or attorney fee."

Thereafter, the Bolls decided to discharge Mr. Hancock and retain Mr. Hepworth. Mr. Hepworth sent a letter to SFM dated December 10, 1996, relating in part:

I believe it would be in my clients' best interests as well as State Farm's to simply allow the Bolls to claim all medical expense damages at trial.... We would be happy to hold the funds recovered representing payment of State Farm's subrogation interest in trust to be repaid.... Of course, we would expect a reasonable attorney fee for collecting the subrogation interest on your behalf.

As the district court determined, there does not appear to have been a written response from SFM to this letter. SFM representatives informed Safeco of the amount of the SFM subrogation claim.

On June 20, 1997, Mr. Hepworth participated in mediation with Safeco and the attorney representing Reese. At the mediation, all of the Bolls' claims were settled for $215,675, including the SFM subrogation claim. At the mediation, Mr. Hepworth requested that the entire settlement amount be paid in one draft. Safeco complied with this request and one draft was issued by Safeco payable to the Bolls, Mr. Hepworth and

SFM. At the time of the settlement, the subrogation claim of SFM was $11,868.81. The parties disputed whether SFM should be required to pay a proportionate share of the costs and attorney fees incurred by the Bolls in collecting SFM's subrogation claim. SFM initially refused to sign the settlement draft for approximately one month. As a result, the Bolls filed suit. Later, SFM signed the settlement draft.

The Bolls claimed breach of contract, recovery under the common fund doctrine, and sought punitive damages. The case went to trial before a jury. Because the common fund doctrine is a claim in equity, it was submitted to the jury in an advisory capacity only. The jury denied relief to the Bolls on all claims. However, the district court disagreed with the jury's advisory decision and found the Bolls were entitled to recover collection expenses of $3,956.26 under the equitable common fund doctrine. Judgment was entered on August 22, 2002, denying all of the plaintiffs' claims except for $3,956.26, which was awarded under the common fund doctrine.

Thereafter, the Bolls made post-trial motions for: Judgment Notwithstanding the Verdict; New Trial; and Additional Findings of Fact and Conclusions of Law. The district court denied all three of the Bolls' post-trial motions. The parties filed timely memoranda of costs and attorney fees. The district court granted the Bolls costs as a matter of right, but discretionary costs and attorney fees were denied because the defendant did not defend this action frivolously, unreasonably or without foundation. SFM's motion for costs and attorney fees was denied because SFM was not the prevailing party. The Bolls appeal and SFM cross-appeals the decision of the district court.

## II.

## STANDARD OF REVIEW

■ The denial of a motion for JNOV is proper when "substantial evidence supports the jury's verdict." *Ricketts v. E. Idaho Equip., Co., Inc.,* 137 Idaho 578, 580, 51 P.3d 392, 394 (2002); *Griff, Inc. v. Curry Bean Co., Inc.,* 138 Idaho 315, 319, 63 P.3d 441, 445

(2003). "The standard of review for issues concerning jury instructions is limited to a determination whether the instructions, as a whole, fairly and adequately present the issues and state the law." *Silver Creek Computers, Inc. v. Petra, Inc.,* 136 Idaho 879, 882, 42 P.3d 672, 675 (2002); *Ricketts,* 137 Idaho at 581, 51 P.3d at 395. This Court reviews the grant or denial of a motion for new trial based on an abuse of discretion standard. *Pratton v. Gage,* 122 Idaho 848, 850, 840 P.2d 392, 394 (1992).

## III.

## ANALYSIS

### A. The District Court Properly Denied The Bolls' Motion For JNOV On The Breach Of The Implied Covenant Of Good Faith And Fair Dealing Claim.

### 1. State Farm's Refusal To Endorse The Settlement Draft

■ The jury ruled in favor of SFM on the Bolls' contention that SFM breached the reimbursement provisions of the insurance contract. The Bolls appeal the district court's denial of their motion for JNOV on the breach of the implied covenant of good faith and fair dealing claim. The Bolls contend SFM breached the implied covenant of good faith and fair dealing because the express terms of the insurance contract gave them the right to collect all of their damages. The portion of the contract at issue states:

b. we are subrogated to the extent of our payment to the right of recovery the injured *person* has against any party liable for the *bodily injury.*

c. if the *person* to or for whom we make payment recovers from any party liable for the *bodily injury* that *person* shall hold in trust for us the proceeds of the recovery, and reimburse us to the extent of our payment.

The Bolls recovered from the liable party and received a joint draft that required SFM and the Bolls endorsement. SFM refused to endorse the draft for approximately one month.

"The issue on a motion for JNOV is whether substantial evidence supports the jury's verdict." *Ricketts,* 137 Idaho at 580, 51 P.3d at 394. " 'Substantial evidence' does not require that the evidence be uncontradicted. Rather, the evidence need only be 'of a sufficient quantity and probative value that reasonable minds could conclude the verdict of the jury was proper.' " *Id.* The district court does not weigh the evidence or evaluate the credibility of witnesses. *Id.* Moreover, "[t]he court draws all inferences in favor of the non-moving party." *Id.*

Alan Stephens, the lawyer hired by Safeco to represent Reese, testified that he offered "two checks as a method of payment in the mediation, and the two checks being one to the Bolls and their attorneys, and a separate check for the State Farm subrogation interest. [But] Mr. Hepworth [the Bolls' attorney] just said, No, just give us one check and I'll take care of the subro [subrogation]." Despite the different ways to interpret this evidence, and after construing inferences in favor of SFM, the jury could have concluded that SFM did not breach the insurance contract because the Bolls interfered with SFM's right to collect its own subrogation interest by refusing the offer of two checks and demanding a single check, thereby combining all interests. In essence, any harm that resulted from the failure of SFM to endorse the check was brought about by the actions of the Bolls. Also, there is no evidence that the contract required SFM to endorse the draft within a certain time frame. SFM only refused to sign the draft for approximately one month.

Additionally, in SFM's initial correspondence to the Bolls, SFM stated: "when we make payment for recovered medical expenses, we have a right of subrogation . . . please take no action that might jeopardize State Farm's right of subrogation . . . please make no attempt to recover the amounts that we have paid to you. . . . If you do recover . . . the policy requires that you hold the amount of our payment . . . in trust and reimburse State Farm." Construing inferences in favor of SFM and in support of the jury verdict, the jury could have reasonably concluded that SFM did not breach the contract from the instructions of the August 26, 1996, letter because the Bolls failed to allow SFM to pursue its subrogation interest.

This Court holds that there is substantial and competent evidence to support the jury's verdict that SFM did not breach the implied covenant of good faith and fair dealing. As such, the district court properly denied the Bolls' motion for JNOV.

### 2. The District Court Did Not Give Erroneous Jury Instructions.

The Bolls claim the jury instructions did not contain the following: an instruction advising the jury that the insurance contract contained a reimbursement provision; that the Bolls had the right to collect the medical damages; that SFM waived the right to pursue collection; that the Bolls were not required to advance SFM its subrogation interest; and that the Bolls did not breach the contract as alleged by SFM.

Jury instructions are proper if they as a whole, fairly and adequately raise the issues and state the law. *Silver Creek Computers, Inc.,* 136 Idaho at 882, 42 P.3d at 676. "To be considered reversible error, an instruction must have misled the jury or prejudiced the complaining party." *Leazer v. Kiefer,* 120 Idaho 902, 904, 821 P.2d 957, 959 (1991).

First, the Bolls claim the district court erred by not giving an instruction that the insurance contract contained a "reimbursement" provision and that the Bolls had the right to collect the medical expenses. But, "the refusal to give a particular requested instruction is not erroneous where the substance of the proposed instruction is covered elsewhere in the instructions given." *Watson v. Navistar Intern. Transp. Corp.,* 121 Idaho 643, 665, 827 P.2d 656, 678 (1992). The district court did instruct the jury on certain aspects of the reimbursement provisions of the policy.

Instruction 24 quotes verbatim the portion of the insurance contract, which presumably provides for reimbursement, "if the person to or from whom we make payment . . . that person shall hold in trust for us the proceeds of the recovery, and reimburse us to the

extent of our payment." Also, Instruction 3 reads: "[p]laintiffs ... claim that these are the facts: State Farm could pursue a claim against the liable party themselves or State Farm was entitled to be paid out of the Bolls recovery from the liable party." Implicitly, in the instruction that "State Farm was entitled to be paid out of the Bolls recovery," is a reimbursement instruction. This statement also shows that the Bolls had the right to recover from the liable party. Thus, the jury received an instruction that the Bolls had the right to collect the medical expenses.

Instruction 18 also relates to aspects of the reimbursement provision by reading: "[a] claim ... must be pursued in one action ... against the legally liable party." Simply put, the instruction means that SFM does not have a separate subrogation claim because the Bolls already pursued recovery. Therefore, reimbursement is the only available means for SFM to be compensated for the medical payments made to the Bolls because only one action can be pursued and the Bolls were first to pursue an action. Thus, the jury instructions given by the district court wholly, fairly and adequately state the law and raise the issues of "reimbursement," and that the Bolls had the right to collect medical expenses. *See Silver Creek Computers, Inc.,* 136 Idaho at 882, 42 P.3d at 676. In summation, one jury instruction quoted verbatim the "reimbursement" language, and other instructions implicitly provided for "reimbursement." As such, the district court's jury instructions were not erroneous.

The Bolls also argue that the jury should have been instructed that SFM waived the right to pursue collection and that the Bolls were not required to pay SFM in advance. As discussed above, "the refusal to give a particular requested instruction is not erroneous where the substance of the proposed instruction is covered elsewhere in the instructions given." *Watson,* 121 Idaho at 665, 827 P.2d at 678. Instruction 18 reads: "[a] claim for medical expense damages ... must be pursued in one action ... against the legally liable party." The essence of the Bolls' complaint is that the jury should have been instructed that SFM could no longer pursue its subrogation interest. This in-

struction, that a claim must be pursued in one action, implicitly instructs the jury that SFM was no longer able to pursue its own claim because the Bolls started an action against the liable party.

Pertaining to the argument that the jury should have been instructed that the Bolls were not required to pay SFM in advance, Instruction 24 quotes verbatim the portion of the insurance contract which presumably provides for reimbursement. This instruction relates to the jury that the Bolls do not have to advance pay SFM, but rather hold in trust the proceeds of the recovery and then distribute it to SFM. Also, Instruction 3 reads: "[p]laintiffs ... claim that these are the facts: State Farm could pursue a claim against the liable party themselves or State Farm was entitled to be paid out of the Bolls recovery from the liable party." By being instructed that SFM is paid out of the Bolls' recovery, the jury was instructed that a recovery from the liable party must precede reimbursement of the medical expenses paid by SFM.

The Bolls also argue that the jury should have been instructed that the Bolls did not breach the contract as alleged by SFM and on the consent defense, which states that SFM cannot refuse the Bolls' services and then sit back and collect its interest without contributing to the collection efforts. First, as the district court instructed the jury, "[i]n determining the facts, you may consider only the evidence admitted in this trial." It appears that determining whether or not the Bolls breached the contract was a factual question for the jury to decide. But, the Bolls claim that the insurance contract was unambiguous and as such, the district court erred in leaving the breach of contract issue up to the jury instead of providing an instruction. However, the jury was given instruction 24, which quoted verbatim the portion of the insurance contract dealing with reimbursement and subrogation. Also, it appears the Bolls do not direct this Court to a proposed jury instruction covering either that the Bolls did not breach the contract as alleged by SFM, or that the contract was unambiguous. "This Court has long adhered to the rule that when the instructions

given by the trial court are correct insofar as they go, one cannot complain of the failure to give additional instructions if none were requested." *Burgess v. Salmon River Canal Co., Ltd.,* 127 Idaho 565, 572, 903 P.2d 730, 737 (1995).

██ In conclusion, the jury instructions given by the district court wholly, fairly and adequately raise the issues and state the applicable law. *Silver Creek Computers, Inc.,* 136 Idaho at 882, 42 P.3d at 676. This Court may disagree with the ultimate result reached by the jury, but if the jury instructions wholly, fairly and adequately state the applicable law, "[t]his Court must presume that the jury followed the jury instructions" in getting to their result. *State v. Ransom,* 137 Idaho 560, 566, 50 P.3d 1055, 1061 (2002).

The District Court Did Not Abuse Its Discretion In Denying The Bolls' Motion For New Trial On The Punitive Damages Claim

██ Although the district court denied the Bolls' Motion for New Trial, the Bolls contend they are entitled to a new trial on the issue of punitive damages only. This Court reviews a district court's denial of a motion for a new trial on an abuse of discretion standard. *Pratton,* 122 Idaho at 850, 840 P.2d at 394. Thus, the district court's decision is upheld "unless the court has manifestly abused the wide discretion vested in it." *Id.* "[T]he trial court is in a far better position to weigh the persuasiveness of all the evidence and the demeanor, credibility, and testimony of witnesses." *Id.*

██ A three part test is used to determine whether a district court abused its discretion: "[w]e consider whether it correctly perceived the issue as discretionary, whether it acted within the boundaries of its discretion and consistently with applicable legal standards, and whether it reached its decision by an exercise of reason." *Shane v. Blair,* 139 Idaho 126, 128–29, 75 P.3d 180, 182–83 (2003).

The district court stated: "[t]he decision whether to grant a new trial is committed to the discretion of the court." Thus, the district court perceived the issue as discretionary. The district court also acted within the boundaries of its discretion by ruling on the motion.

██ The district court set out the proper law for analyzing a punitive damages award. Before a plaintiff can recover punitive damages, he or she must first be entitled to legal or equitable relief. *Payne v. Wallace,* 136 Idaho 303, 308, 32 P.3d 695, 700 (2001). In this case, the jury determined that the Bolls were not entitled to relief under either a breach of contract theory or the common fund doctrine. Therefore, the jury did not reach the issue of punitive damages. The Bolls are not entitled to relief on the breach of contract theory. It follows that the Bolls are not entitled to a new trial for punitive damages based on the breach of contract claim because they are not entitled to relief on the substantive claim.

██ However, because the jury sat as advisory only, the district court decided the Bolls were entitled to relief under the equitable fund doctrine even though this was "a close case." As the district court explained in its opinion, an award of punitive damages is only proper when it is shown that a defendant acted in a manner that was "an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or disregard for its likely consequences" and the defendant must have acted with an extremely harmful state of mind. *Cheney v. Palos Verdes Inv. Corp.,* 104 Idaho 897, 905, 665 P.2d 661, 669 (1983). Furthermore, punitive damages are not favored in the law and are to be awarded cautiously. *Id.* The district court granted relief under the common fund doctrine, but "independently considered whether punitive damages should be awarded and has concluded that the conduct of State Farm was not an extreme deviation from reasonable standards of conduct sufficient to allow an award of punitive damages." Based on the district court's detailed articulation of the applicable rule, its independent review of the case, and keeping in mind the deferential standard, this Court determines the district court did not abuse its discretion by denying the Bolls' Motion for a New Trial.

## B. The District Court Did Not Err In Awarding The Bolls Attorney Fees Against SFM's Subrogation Interest Pursuant To The Equitable Common Fund Doctrine.

SFM contends that the district court improperly allowed the Bolls to recover collection expenses on its subrogation interest for medical expenses paid on behalf of the Bolls. The "common fund" general rule "is that the insured may retain out of the fund recovered from the wrongdoer, after the payment of the policy, the costs and reasonable fees incurred in the litigation." *Cedarholm v. State Farm Mut. Ins. Companies*, 81 Idaho 136, 142, 338 P.2d 93, 96 (1959). The general rule has subsequently been expanded. "[N]otice to the insurer that the insured is pursuing an action or settlement that includes the subrogation interest is necessary before the insured may charge the insurer attorney fees for the collection of the subrogation interest." *Miner v. Farmers Ins. Co. of Idaho*, 116 Idaho 656, 658, 778 P.2d 778, 780, (1989). "If the insurer declines to participate in the action, it is on notice that it will be required to pay a proportionate share of the attorney fees out of any money recovered on its behalf." *Wensman v. Farmers Ins. Co. of Idaho*, 134 Idaho 148, 152, 997 P.2d 609, 613, (2000). Although not the majority, there has been some disagreement with the holding in *Wensman* because "[t]he notice requirement would be worthless if after having been notified, the subrogee could not refuse the services it is being notified of." *Id.* at 153–54, 997 P.2d at 614–615.

Therefore, SFM is required to pay its share of attorney expenses for recovery of its subrogated interest if SFM has been put on notice that the Bolls intended to pursue their claim and if the efforts of the Bolls or their attorney resulted in an actual benefit to SFM.

### a. Notice

The findings of fact of a district court will not be disturbed on appeal if they are supported by substantial and competent evidence. *Reed v. Reed*, 137 Idaho 53, 56, 44 P.3d 1108, 1111 (2002). The district court concluded "[a]s stated in the Findings of Fact, there is no question that in this case SFM received notice that the Bolls and their attorney intended to pursue the SFM subrogation claim and that they intended to be compensated." Substantial and competent evidence exists to support the district court. The Bolls' first attorney, Mr. Hancock, sent a letter to SFM which related "we understand that you have the rights of subrogation for any monies which may be expended on behalf of your insured. We do expect reasonable compensation for the recovery of any monies which we obtain for State Farm Insurance." Moreover, Mr. Hepworth, the Bolls' second attorney, sent a letter to SFM dated December 10, 1996, relating in part:

> I believe it would be in my clients' best interests as well as State Farm's to simply allow the Bolls to claim all medical expense damages at trial. . . . We would be happy to hold the funds recovered representing payment of State Farm's subrogation interest in trust to be repaid. . . . Of course, we would expect a reasonable attorney fee for collecting the subrogation interest on your behalf.

Based on the above, we hold that there was substantial and competent evidence to support the district court's conclusion that SFM had notice.

SFM claims that it was not provided timely and sufficient notice. The notice was timely because the letter from the Bolls' second attorney, who actually obtained the settlement, was dated December 10, 1996; the settlement was not reached until June of 1997. SFM also claims that notice was not sufficient because it did not inform SFM that it could elect to join the action, or if not join the action, pay the collection fee. Also, SFM argues the notice did not state that SFM could join the action and be represented by counsel of its own choosing. However, the most recent case to interpret *Miner*, which SFM relies upon, stands for the proposition that "timely notice is required to give the holder of a subrogated interest the right to join the action and to be represented by legal counsel of its own choosing if it so elects." *Wensman*, 134 Idaho at 152, 997 P.2d at 613. This language in *Wensman* does not specifically require mandatory language for the

notice, but rather promulgates the purpose of the notice. The December 10, 1996, letter from the Bolls' attorney informed SFM that an option was for the Bolls to recover damages and place SFM's subrogated interest in trust. The notice, by being represented as an option, gave SFM sufficient notice that it could choose to obtain its own counsel. This Court holds that there was substantial and competent evidence to support the district court's conclusion that SFM had notice.

### b. Actual benefit

SFM argues that it did not receive an actual benefit from the collection efforts of the Bolls. The district court disagreed by concluding "there was actual benefit conferred upon SFM by the Bolls and their attorney's actions." As above, the standard is substantial and competent evidence. "This Court will not substitute its view of the facts for the view of the district judge." *Williamson v. City of McCall*, 135 Idaho 452, 454, 19 P.3d 766, 768 (2001). Testifying as a witness for the Bolls, attorney Lloyd Webb offered the opinion that it was his expert opinion that the Bolls' litigation compelled Safeco to pay. Additionally, Mr. Webb reviewed the Bolls' attorney's time records and testified 195.6 attorney hours compelled payment from Safeco.

SFM contends that the Bolls did not provide a benefit because Safeco had already determined to pay the subrogated interest. However, on July 2, 1996, Safeco sent a letter to SFM stating: "we are not at this time in a position to honor your subrogation interest at this time, but will do so at such time settlement is reached. Keep in mind we will honor any medical expenses that are necessary and related to the above accident." This letter could reasonably be interpreted to mean that Safeco was not in a position to honor the subrogation interest at the time of the letter because liability was not yet determined. This is bolstered by the additional language "but will do so at such time settlement is reached." This Court cannot substitute its judgment for that of the district court even if a better interpretation exists. *See Ricketts*, 137 Idaho at 578, 51 P.3d at 394 (2002). Therefore, substantial and compe-

tent evidence exists to support the district court's finding that SFM received an actual benefit from the Bolls' collection efforts.

Lastly, SFM argues that the district court failed to make any conclusion of law regarding whether the Bolls' or their Attorneys' conduct was inequitably unfair thereby precluding recovery under the "clean hands doctrine" because Rule 52(a) requires the district court to make legal conclusions concerning all material issues. However, the "clean hands doctrine" is not a "material issue" in this case; therefore, SFM's argument lacks merit.

In conclusion, SFM received both notice and an actual benefit from the collection efforts of the Bolls, justifying the district court's award of attorney fees for collection expenses incurred by the Bolls' in securing a settlement for SFM's subrogation interest.

### C. The District Court Did Not Err In Determining That The Bolls Were The Prevailing Party Under Rule 54(d)(1)(B).

"[C]osts shall be allowed as a matter of right to the prevailing party or parties, unless otherwise ordered by the court." I.R.C.P. 54(d)(1). SFM argues that SFM, rather than the Bolls, were the prevailing party; as such, the district court should not have awarded costs to the Bolls as a matter of right. The district court granted costs as a matter of right to the Bolls, but denied discretionary costs. However, the district court did not grant attorney fees against SFM because SFM did not defend the case frivolously, unreasonably or without foundation. The district court did not grant attorney fees and costs to SFM because it was not the prevailing party.

"The determination of who is the prevailing party if anyone, is within the trial court's discretion, and this Court will not disturb the trial court's decision unless there is an abuse of discretion." *Farm Credit Bank of Spokane v. Wissel*, 122 Idaho 565, 568, 836 P.2d 511, 514, (1992).

To determine who is the prevailing party and entitled to costs as a matter of right: The trial judge shall in its sound discretion

consider the final judgment or result of the action in relation to the relief sought by the respective parties ... and the extent to which each party prevailed upon each of such issue or claims.

I.R.C.P. 54(d)(1)(B). A trial court does not abuse its discretion if the court perceived the issue as one of discretion; acted within the outer boundaries of this discretion and consistent with applicable legal standards; and reached the decision by an exercise of reason. *Id.* (citing *Sun Valley Shopping Center, Inc. v. Idaho Power,* 119 Idaho 87, 803 P.2d 993 (1991)).

In this case, the trial court set out the applicable rule as above. By citing the correct discretionary standard, the district court perceived the issue as one of discretion. Furthermore, by applying the standard and concluding that the Bolls were the prevailing party, the district court acted within the outer boundaries of the discretion and consistent with applicable legal standards.

Lastly, in determining the prevailing party, the district court exhaustively analyzed the issue of the case and the respective outcomes. The Bolls prevailed on the common fund claim and were awarded $3,956.26 in attorney fees for settling SFM's subrogation claim. The district court was also aware that the largest claim in the case was for punitive damages, of which SFM prevailed. But, the district court concluded "[d]espite the great disparity between the amount sought by the plaintiffs and their ultimate recovery, this court is persuaded that the plaintiffs are the prevailing party under Rule 54(d)(1)(B), I.R.C.P. because the basis for their claim has always included recovery for a share of the costs and attorney fees incurred in recovery of State Farm's subrogation or reimbursement claim." By applying the correct legal principles, analyzing the facts, and then explaining why the court determined the Bolls were the prevailing party, the district court reached its decision by an exercise of reason.

Therefore, we hold that the district court did not abuse its discretion by determining the Bolls were the prevailing party and awarding them costs as a matter of right.

Additionally, the Bolls contend that they are entitled to attorney fees at trial and on appeal because they are the prevailing party. Idaho Code § 12–121 permits the court to award attorney fees to the prevailing party in a civil action. I.C. § 12–121. Idaho Rule 54(e)(1) provides for an award of attorney fees under I.C. § 12–121 only when the court finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation. I.R.C.P 54(e)(1). An award of attorney fees is committed to a trial court's discretion. *U.S. Nat'l Bank of Oregon v. Cox,* 126 Idaho 733, 735, 889 P.2d 1123, 1125 (Ct.App.1995).

As discussed above, the trial court set out the proper rule for determining attorney fees. Therefore, the two preliminary inquiries of the abuse of discretion standard are satisfied. The only remaining question is whether the court exercised reason in determining the Bolls were not entitled to attorney fees. The district court determined that at the time of the lawsuit the law was not settled whether an insurer would be required to pay a proportionate share of costs and attorney fees when the insurer did not consent to the insured taking action to collect the insurer's claim. The *Wensman* decision addressed this question and was decided on March 29, 2000. It was only after the *Wensman* decision that the Bolls amended their Complaint seeking recovery under the common fund doctrine for punitive damages. The district court concluded "[u]nder these circumstances, the court cannot say that State Farm's defense of this law suit was frivolous, unreasonable or without foundation." The district court applied the facts to the applicable law and exercised reason to determine that SFM did not pursue or defend the lawsuit frivolously. As such, the district court did not abuse its discretion in denying the Bolls attorney fees at trial.

## D. Neither Party Is Awarded Attorney Fees On Appeal.

Both parties seek attorney fees on appeal. "In any civil action, the judge may award reasonable attorney fees to the prevailing party." I.C. § 12–121. However, in this case both parties appealed decisions of

the district court. Because this Court affirms the district court, both parties prevailed in part as the respondent to the other party's appeal but did not prevail in their respective appeal in chief. Therefore, neither party is awarded attorney fees.

## IV.

## CONCLUSION

This Court holds there is substantial and competent evidence to support the jury's verdict that SFM did not breach the implied covenant of good faith and fair dealing. As such, the district court properly denied the Bolls' motion for JNOV. The district court's jury instructions were not erroneous. This Court finds no abuse of discretion by the district court.

Chief Justice TROUT and Justices SCHROEDER, EISMANN, and Justice Pro Tem WALTERS concur.